Good morning. May it please the Court, my name is James Patterson and I represent the petitioners Fuad and Sohir Mansour, husband and wife. This is a petition for review of the decision of the Board of Immigration Appeals, summarily affirming a denial of asylum holding to this couple. At the outset, I should note that we raised in our petition for review and in our brief the issue of the denial of voluntary departure and also the summary affirmance issues. In between the time our brief was submitted and the brief of the government was submitted, this Court decided, Alvarez-Santos, which seems to dispose of the voluntary departure issue, this Court has said that they do not have jurisdiction to decide those issues on a denial of voluntary departure. And the statute say it at 1229F? The statute does say it, Your Honor, although, again, we were seeking to be able to seek an interpretation. Again, there are lots of jurisdiction-stripping statutes or provisions in IHRA-IHRA, and that particular one had not been, in my opinion, interpreted distinctly, and it clearly has been. But the stay one hasn't been interpreted very well, either. I'm sorry? The stay hasn't been interpreted very well, either. I understand the Court's position on that. That's all right, because that gives lawyers business. And judges, too. And judges, so lots of things. I don't know if you're looking for business from what I hear. We are, believe me. Would you like me, Your Honor, to address, just throw in my two cents' worth on the stay issue, or? Well, you didn't get any order from a judge, did you? My understanding, again, and I'm kicking myself for having left that part of the record in my car, I have the administrative record that was prepared. The stay order is not in that. My understanding is that it goes to a motions panel, but I believe you're correct. It's actually just signed by a staff attorney. Okay. Well, it doesn't even go to a motions panel, because I sat on the motions panel in January. I didn't hear any of these cases. The initial notice that we get indicates that it will be held until the next available motions panel. Well, it may be held until then, but I didn't get any submissions about anything. I think our general order gives that authority to staff attorneys. I don't think these are being passed on to us. When I sat on those panels, I've had these stay matters come before me. I believe in asylum cases that stay … Depends on the luck of the draw. Unfortunately true. That's a truism in all of immigration law. You don't find anything in your file signed by a judge that said that the stay was granted. Do you have a position on stay after this? If you do not prevail and we come to an agreement, should we issue an order terminating the stay right away? I don't believe so. We would argue that you should not. I think the … I think that's … The stay is issued at this point. I think the burden of leaving that stay in place for a few more months until a final decision is made is minimal. And in a case like this where you're dealing with an asylum case where the irreparable harm is not the fact that the person may have to just wait in a foreign country for their decision. It's that they may be sent back to some place where there is a real fear of harm and persecution. I believe that in that circumstance, the balance would be to leave the stay in place until a final order is made. In all asylum cases? I think … That argument could be made, it seems to me, in every asylum case. Just about. And in fact, in my experience … If there is a reasonable fear of future persecution. And in my experience, the oil seems to be inclined not to oppose stays in asylum cases much more so than in other cases. I don't think they have enough attorneys to go around and deal with all the cases. I've had that impression in the past. I think they're starting to catch up at this point. They're not catching up. They're just dumping everything on us. I would … I think maybe at the front end that those requests for stays should go to a motion panel, and a motions panel should look at this particular asylum claim. Is there something here? And then what's the standard that should be applied? I believe it's the standard that's in place, a likelihood of success on the merits and irreparable harm. And again, the irreparable harm … You disagree with the other circuit that has followed the statutory standard. And are you willing to go to the Supreme Court and defend it? I am, if called upon to do so. I'm glad that I live within this circuit. That may be why we get so many of these cases. Here, here. Also, on the issue of … Just let me disclose one more here. The streamlining issue which we brought up, we understand Carice … That's taken care of. Correct. It all collapses into one in an asylum case like this. We do believe that this decision should be reversed, that this petition should be granted, and at a minimum the case should be remanded. This immigration judge made a couple of mistakes, and we're looking at his decision because the board just summarily affirmed it. First of all, he made an improper and unsupported credibility finding, an adverse credibility finding here. Essentially, the law states that deference will be accorded to those credibility findings where a specific or expressed finding is made and then there are specific and cogent reasons for it. In this case, the immigration judge didn't make a specific finding. In fact, the government is arguing he didn't make a finding at all. But he did. I think there can be no doubt that he calls into question the credibility. He … Well, he didn't make an adverse credibility finding, did he? I believe that he did, Your Honor. He stated that he was troubled by certain inconsistencies in the evidence. He indicated further … He said he had troubles, but he didn't make an adverse credibility finding. He said … You know, I'm trying to help you out. And I understand that. I believe that he didn't make an expressed credibility finding. You're correct. And so I would jump on that part. I believe, though, that he allowed his – the things that troubled him to affect his interpretation of the evidence. Our circuit doesn't allow implicit adverse credibility determination. Correct. Implicit. And so all he did then essentially is impugn the evidence that was presented. He said he was troubled by the evidence. He said that credibility was suspect. I can say I'm troubled about the stay, but I don't – that doesn't tell you what I'm doing. He did – he also said it was more plausible. A lot of judges will say I'm troubled about this. Explain it to me, you know. Well, they're not really that troubled, but they want to hear what you've got to say. In argument, but this was in his decision. He's not waiting to hear what the attorneys are going to say. He's telling them … He's troubled. He's troubled. … for economic reasons rather than for – as refugees. And, again, there is no basis for that speculation. He's saying that he believes they came here – or it's more plausible that they came here for economic reasons without giving any reason for that – for that finding, which, again, essentially is undermining the evidence of past persecution in this case, which goes then to the well-founded fear of future persecution, which I believe is the … What does the State Department report say about cops in Egypt? State Department report doesn't … They've been there a long time, a couple thousand years, right? They have. That's correct. Things – and this is one of the reasons why I believe that there is a well-founded fear of future persecution here. They're a branch of the Eastern Christian Church, right? Correct. All right. But things have gotten worse in Egypt since the Mansours left in 1988. The year before they filed their asylum application, Islamic fundamentalists or terrorists went into a Christian Coptic church and, while there was a youth group meeting, sprayed the place with bullets and killed 13 kids. That year – or that same – in that same week, there were another 10 people who were killed in a similar incident. The violence has escalated. And, in fact, the reports – the documentary evidence that was submitted indicates that there is an increasingly violent campaign against Coptic Christians in Egypt. That was at page 324 – excuse me – of the administrative record. The Amnesty International report noted that torture is systematically practiced by security forces, that there are hundreds of complaints and no prompt impartial investigations into claims of violence and harassment against Coptic Christians. In 1996, there's – again, other evidence, documentary evidence that was submitted, not in the State Department report, but that indicates that a Coptic Christian had been shot and his head had been hacked off. These are things that the Mansours are hearing that are now taking place in Egypt that led them to believe that they had a well-founded fear of persecution upon return. And, again, I think it's important to look at – the judge only looked at past persecution. He determined there was not sufficient evidence to find past persecution. And I believe he based that primarily upon his doubts and the things that troubled him about the testimony, which was inappropriate. But even if there's not past persecution, even if that was just discrimination or harassment, there's enough here with that discrimination and harassment coupled with the increasing violence in Egypt that was in the documents and the specific particularized circumstances of the Mansours, having lived here in the United States now for – now at this point for 15 years, having a 13-year-old son and an 8-year-old son born here who don't speak Arabic, who only speak English, in their particular circumstances, you can look at that past harassment, discrimination, persecution – and I'm not conceding that it wasn't – and couple that with their particular circumstances and the increasing violence that was part of the record that was indicated in the documents submitted and find that there is a well-founded fear of persecution here. And the immigration judge never discussed that. He never got to that point. I notice that I'm almost out of time. I did want to reserve a minute or so for a response. So unless there are other questions, I think I'll sit down at this point and then come back and respond. Thank you, Your Honor. How do you feel about stays? Granted, there's no opposition. I would have to agree with counsel that in many asylum cases, there is no opposition tendered by the government. Now, you also did not enter into stipulations with the petitioner for the entry of a stay, which – under which there's an agreed set of facts that meets the statutory standard. Is that correct? I have not seen that, Your Honor, no. I haven't either. And I was just wondering if the government did it as a matter of course. Not to my knowledge, Your Honor. However, I can't speak for the entire system. And you don't have a case where a judge signed an order granting a stay either, do you? Not that I can recall, Your Honor. I've signed them. I've signed them. I don't doubt that, Your Honor. Thank you. Good morning. May it please the Court. This is Dave Dauenheimer on behalf of the Attorney General. In their brief to this Court, the petitioners do not argue that the record compels a finding of past persecution, nor did they argue that the record compelled a finding of future persecution. Instead, they raised four tangential arguments, two of which they've conceded while walking before this Court, that is, the streamlining issue and the denial of voluntary departure issue. The third issue is the adverse credibility finding. And Judge Pegerson noted that there was no real adverse credibility finding made in this case. Instead, what the Court did was found that they did not meet the requirements to show, to demonstrate that they qualified as refugees, even given their testimony taken as true. So the adverse credibility issue is really a red herring. The only real issue is the fourth issue which is raised, which is whether the I.J. erred in not considering the petitioners' fear of future persecution. Now, while the I.J. may not have said, I find that you do not have a well-founded fear of future persecution, what he did do is review and set out the legal standard for eligibility, page 113 of the record. He noted that the asylum applicant has to demonstrate that he's a refugee. He noted that a refugee is defined as a person who's unwilling or unable to return because of past persecution or future persecution. And then he found that the petitioners, quote, fail to establish the necessary evidence to support their burden of proof and show that they are refugees within the meaning of the statute, unquote. That's at page 116 of the record. So he made an explicit finding that they failed to meet the definition of refugees, and that covers not only the past persecution, but as well as their claimed fear of future persecution. Then the immigration judge went on to explain that he examined Mr. Wada's claims in terms of corroboration to support her husband's claimed fear of future persecution. He noted that with regard to future fear, he noted that both of the petitioners have Coptic relatives that are still in Egypt who are all gainfully employed, either a doctor attending business school or owning a market of his own. And he also noted that Mr. Mansour actually still owned property in Egypt. He also found that their claims of a fear of a terrorist attack, of being one of these people in a temple that is attacked by the terrorists, were not sufficient to show that they were refugees within the meaning of the INA. And that's, again, at 119 of the record. He found that the sons' – finally, he found that the sons' learning deficit did not meaningfully alter the finding of no well-founded fear in the record 121. Substantial evidence in the record that supported the IJ's determination that petitioners failed to demonstrate that they qualified as refugees. And petitioners do not argue otherwise in their brief to this Court. Petitioners' tendential claims lack any merit. They offer no evidence or argument that would compel a finding contrary to the immigration judge's determination and that they failed to establish eligibility for their relief. When the petitioners came to the United States as visitors, they had a sister – Mr. Mansour had a sister here who, legally, he could have sought a visa and emigrated. Instead, he lied to the INS because he didn't, quote, want to wait that long. They should not have to wait. It's a very long wait, Your Honor. I'm not sure how long it would be based on a visa of a sister who's a United States citizen, but it could be 10 years. However, he didn't want to wait that long, and he should not be allowed now to jump in front of those who are properly waiting their turn, and this petition should be denied. I note that there are no questions from the Court. If there are any further questions, I – that's all I have. Kennedy. I notice in this file – I really hadn't looked at this stuff that closely before – but here you've got the same person, Laurie Skiablaba. And so she sent out – closes a copy of the Board's decision in order in the above-referenced case. Date of this notice, 7-11-2002. And then it's stamped by Department of Justice, Executive Office for Immigration Review, July 15th, 2002. And then the Board's order is dated July 11th. So that conforms with the notice date, but it's four days earlier than the other day. I'm going to be watching those things carefully from here on in. All right. Thank you. Just 60 seconds. Your Honor, the immigration judge did do his standard, I would call it boilerplate restatement of the law, outlining all of the well-founded fear of future persecution. But then we actually discussed the case. What he said was the asylum claim fails because it does not establish that he has been persecuted in the past. That's at the administrative record at 118, 119. He's talking about past persecution there. And again, I don't think we should be focusing, and I don't think the immigration judge should have been focusing on the sufficiency of the past persecution, but rather the totality of the circumstances here that establish that the Monsoors do possess a well-founded fear of future persecution. And for that reason, we would urge the Court to grant this petition and direct that the court, that the BIA or the immigration judge look at the issue of asylum on discretion and remand it for that purpose. Are there no further questions? Thank you, Your Honor. All right. Go in peace. And we'll recess until 9 a.m. tomorrow morning. All right. This session is adjourned. Thank you.
judges: Pregerson, Beezer, Tallman